## CHARLESTON.

CLEAVENGER v. FELTON *et al.*

Submitted February 1, 1899—Decided April 8, 1899.

1. LIEN—*Judgment Creditor.*
   *Snyder* v. *Martin*, 17 W. Va. 276 (Syl., point 7), and *Snyder* v. *Botkin*, 37 W. Va. 355 (Syl., point 3), reaffirmed. (p. 254).

2. EQUITY PLEADING—*Parties--Petition.*
   When a party files his petition, asking to be admitted as a party defendant in a pending suit in equity, in which no allegation is made naming or referring to him in any way, and no relief is prayed against him, and he is admitted to become such party defendant, he does not become a party in the cause until he has ·been made a party by some allegation in the bill as amended. But this does not apply in a case where a party files his petition, making the parties to the suit parties to his petition, and setting up claim to the subject-matter in controversy, when his petition can properly be treated as an original bill. (p. 255).

Appeal from Circuit Court, Barbour County.

Bill by C. G. Cleavenger against J. H. Felton and others. A decree was rendered, from which complainant appeals.

*Reversed.*

J. HOPP WOODS, for appellant.
MELVILLE PECK, for appellees.

McWHORTER, JUDGE :

C. G. Cleavenger filed his bill in the circuit court of Barbour County against J. H. Felton, S. D. Felton, F. A. Cleavenger, J. Hop Woods, special commissioner, and C. M. Peck, defendants, alleging that at a judicial sale made

by said Woods, special commissioner, on the 30th day of October, 1891, of a tract of eighty-seven acres of land, on the waters of Simpson creek, sold in the chancery cause of Jemima Right against Heatherly and others, said J. H. Felton became the purchaser at the price of one thousand dollars; that he paid to said commissioner sixty-nine dollars and seventy cents, the cash payment thereof, and made his three obligations of three hundred and ten dollars each, bearing date October 30, 1891, and payable, respectively, in six, twelve and eighteen months, with interest, with S. D. Felton as surety, which sale was confirmed, the commissioner directed to collect the deferred payments, and after such collection to convey said land to J. H. Felton; that said commissioner afterwards institued a chancery suit against J. H. Felton and S. D. Felton for said purchase money, and in October, 1893, obtained a decree therein for resale of the land, and afterwards on the 13th of February, 1895, the land was resold as the property of the purchaser, J. H. Felton, and purchased by J. Perry Thompson, at the price of one thousand nine hundred and five dollars, who paid the cash payment of ninety-nine dollars and seventeen cents, and executed his two notes for nine hundred and two dollars and ninety-one and one-half cents each, at six and twelve months, for the residue of the purchase money. The sale was confirmed, and the commissioner authorized to collect the unpaid purchase money, and when paid to convey the tract of land to Thompson, the purchaser, to pay the costs of suit, expenses of sale, etc., another debt decreed to be paid in the cause in which the property was sold, and the residue to be paid into court to the general receiver, to abide the action of the court upon the petition of C. M. Peck, filed and referred to in said cause, and said Peck's petition in support of the allegations of his bill.

The bill alleges that; after payment of the costs and expenses of sale in said cause and the plaintiff's debt in said cause decreed, there was a surplus to be paid by the said commissioner into the hands of the general receiver as the money and property of said J. H. Felton, which was sought in said petition to be applied upon certain judgments therein mentioned, claimed by petitioner to be

liens thereon as the proceeds arising from the sale of real estate upon which said judgments were liens; that, although upon the record and proceedings in said causes, the said lands appeared to be the land of J. H. Felton, and the said surplus arising from the sale thereof his property, yet in fact the same were always the land and property of plaintiff, C. G. Cleavenger; that the defendant J. H. Felton, through the agency of the defendant F. A. Cleavenger, purchased the land at the judicial sale made in the first named cause at the instance of, and expressly for the benefit of plaintiff; that plaintiff procured the defendant F. A. Cleavenger, who is his brother, to get said defendant J. H. Felton to buy said land in his own name, and so hold the same in trust for the plaintiff; that said Felton acted, not only at the first sale, but also at the second one, as the agent and trustee of plaintiff for the purpose; that plaintiff was moved to so engage said J. H. Felton and F. A. Cleavenger as his agents in the said purchase, for the reason that the land could be purchased at a less sum by them than by him; that this fact was well known to said F. A. Cleavenger and J. H. Felton, and so disclosed to them by plaintiff; that plaintiff furnished the cash payment and every dollar that was paid the commissioner by said Felton; that the said agency and trust had always been admitted by said Felton and Cleavenger to plaintiff; that neither of them ever claimed any right or title to said land or to said surplus or any interest in either; that both of them were aware that plaintiff was present, if not at all, at least at some, of the times when the land was offered for sale in both of said causes; that at such times plaintiff advised with them and directed their bidding; that at the time of the first purchase plaintiff was and still is able to buy and pay for said land at the price given by said Felton; that said Felton was then also able to buy and pay for same, but that since that time, and at the time made in said second named cause, was in embarrassed circumstances, and unable to repay plaintiff the money which plaintiff had advanced and paid to him on said purchase, and plaintiff was therefore compelled to either lose said payments, and permit the surplus arising from the sale made in said second cause to be applied as in said petition prayed for upon the judgments

of petitioner against said Felton, or to set up herein his resulting trust; that, to enable plaintiff to more easily pay the purchase money due said commissioner, he purchased at a discount the decree to the plaintiff in first of said causes, and took from her an assignment of her debt, which was ascertained to be three hundred and sixty dollars and thirty-five cents, with interest from May 22, 1891, whereof said defendants, Cleavenger and J. H. Felton, had notice, and filed a copy of said assignment as an exhibit with his bill, or would do so with his proof, and prayed that a resulting trust might be decreed to exist in his favor against said defendants J. H. Felton and F. A. Cleavenger, in respect to said surplus; that the receiver, after collecting from said commissioner, be decreed to pay same to plaintiff that the whole right of the plaintiff and said Felton and Cleavenger and petitioner, C. M. Peck, in respect to said surplus, be ascertained and decreed for, and for general relief; which bill was sworn to.

On the 29th day of October, 1896, a petition was tendered by J. N. B. Crim, verified by his affidavit, claiming to be a lien creditor of the defendant J. H. Felton, the filing of which was resisted by plaintiff, but the same was ordered to be filed and stand as the answer to plaintiff's bill; and the plaintiff and the defendant J. Hop Woods, special commissioner, entered their appearance to said petition, and replied generally thereto, and the cause was remanded to rules with leave to petitioner to sue out process thereon against the other defendants to plaintiff's bill, and mature the same for hearing. The petition alleged that petitioner was a judgment creditor of James H. Felton and Samuel D. Felton, jointly and severally, and was the owner of various judgments, a list of which is given in his petition, which he claimed were liens upon the real estate of J. H. Felton, and relies upon his allegation that he gave Felton credit on the ownership in whole or in part of said lands in Felton, and that the conduct of Felton and Cleavenger was fraudulent as to petitioner. Depositions were taken and filed in the cause, and the case was finally heard on the 16th of November, 1897, when the court ascertained by its decree that J. H. Felton purchased the eighty-seven acres of land, on the 30th of October, 1891, at the price of one

thousand dollars, and paid thereon the aggregate sum of six hundred and three dollars and seventy-three cents, including interest to the 15th day of November, 1897; that from the pleadings and proofs in the cause it appeared that the special commissioner to enforce payment of the residue of the purchase money, did, on the 13th day of February, 1895, resell the said land to one J. Perry Thompson at the price of one thousand nine hundred and five dollars, in the chancery cause of Woods, commissioner, against Felton and others; and that it further appeared from the pleadings and proofs, that the plaintiff, C. G. Cleavenger, paid on said original purchase money of J. H. Felton to the said Woods, special commissioner, the said sum of six hundred and three dollars and seventy-three cents, including interest to November 15, 1897, as part of the original purchase money due said special commissioner in payment of the said land so purchased in the name of said J. H. Felton, and there exists a resulting trust *pro tanto* in favor of said C. G. Cleavenger for the amount of money so paid by him as the purchase of the land aforesaid, and proceeded to decree that, after paying the liens existing against said eighty-seven acres of land, as ascertained in the chancery cause of Jemima Right against J. Heatherly and others, and not theretofore paid, that plaintiff, C. G. Cleavenger, be paid the sum of six hundred and three dollars and seventy-three cents, with interest from November 15, 1897, till paid, and his costs of his suit; and decreed that the surplus arising from the sale to Thompson was the property of J. H. Felton, and that the petitioner, J. N. B. Crim, was entitled to have the said surplus applied to the satisfaction of his judgments against said J. H. Felton, as set up in his petition, and directed the same to be paid accordingly. From this decree, C. G. Cleavenger appealed to this Court, claiming that the court erred in not giving him all the relief prayed for in his bill, instead of the partial relief given. The proofs show clearly that J. H. Felton, in purchasing the property, was acting solely for and on behalf of C. G. Cleavenger. Felton testifies that he purchased it for Charles G. Cleavenger, the plaintiff in this cause, and at the instance of the defendant, F. A. Cleavenger, and says that Cleavenger fur-

nished the money that he paid on it.  After the sale, Cleavenger took possession of it, farmed it, raised grain upon it, took timber off it, paid the taxes on it, and had sole control of it.  Felton never claimed it or any part or interest in it in any way, or had possession, never was on it, and paid no part of the purchase money.  The court finds that Felton paid six hundred and three dollars and seventy-three cents on account of the land, which was all that was paid upon it,  then ascertains from the proofs that C. G. Cleavenger paid said sum and that a resulting trust exists in his favor to that extent.  Felton, F. A. Cleavenger, and appellant, all testify unequivocally that the purchase was made for appellant; that he furnished all the money that was paid on it; and that, if he is entitled to anything, he is entitled to all.  "When one party pays all or part of the purchase money for land, and title is taken in the name of another, a constructive trust, called a 'resulting trust,' arises in favor of  the party paying as to the whole land or *pro tanto*."  *Currence* v. *Ward*, 43 W. Va. 367, (27 S. E. 329).  Crim claims that he gave Felton credit on the faith of his ownership of the land.  In *Snyder* v. *Martin*, 17 W. Va. 276 (Syl., point 7), it is held:  "When statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of a debtor than the debtor himself has when the judgment is recovered.  He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate."  This is reaffirmed in *Snyder* v. *Botkin*, 37 W. Va. 355 (16 S. E. 591, Syl., point 3).  See, also, *Floyd* v. *Harding*, 28 Grat. 401, 407.  If Felton had paid a part of the purchase money and Cleavenger a part, then there might have been a  resulting trust *pro tanto*; but the purchase was made for Cleavenger alone, and he paid every dollar that was paid, so that the land was held in trust for him, and after it was resold the trust went to the surplus of the purchase money after paying the balance due from the *cestui que trust*; for "a trust may exist in any property, real or personal, which is in the eye of a court of equity property of value."  *Currence* v. *Ward*, *supra*.  It

is insisted that the petition of Crim ought not to be considered any part of the record, and the proof taken thereunder as inadmissable; said Crim not having been made a party to the suit by amended bill.   *McCoy* v. *Allen*, 16 W. Va. 724, 725 (Syl., point 3); *Shaffer* v. *Fetty*, 30 W. Va. 248, (4 S. E. 278, Syl., point 6).   And in *Shinn* v. *Board*, 39 W. Va. 497, (20 S. E. 604, Syl., point 3), it is held that, "when a party files his petition, asking to be admitted as a party defendant in a pending suit in equity, in which no allegation is made naming or referring to him in any way, and no reilef is prayed against him, and he is admitted to become such party defendant, he does not become a party in the cause until he has been made a party by some allegation in the bill as amended." This, however, does not apply in a case where a party files his petition, making the parties to the suit parties thereto, and setting up claim to the subject-matter in controversy, when his petition may properly be treated as an original bill.   *Sturm* v. *Fleming*, 22, W. Va. 404; *Scragg* v. *Mann*, 46 W. Va.,209 (33 S. E., 110).   For the reasons herein stated, the decree is reversed, and the cause remanded, with directions to the circuit court to grant plaintiff the relief prayed for in his bill.

*Reversed.*